IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| SPENCER ELAM | § | |
| v. | § | CIVIL ACTION NO. 6:15cv676 (Crim. No. 6:11cr42-1) |
| UNITED STATES OF AMERICA | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Movant Spencer Elam, proceeding *pro se*, filed this motion to vacate or correct sentence under 28 U.S.C. §2255 complaining of the legality of his conviction. This Court referred the matter to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Elam was charged in a 12-count indictment with conspiracy to possess with intent to distribute hydrocone, three counts of use, carrying, and possession of a firearm during and in furtherance of a drug trafficking crime, two counts of possession with intent to distribute hydrocodone, two counts of being a felon in possession of a firearm, and three counts of use of a communications facility to facilitate the commission of a felony. He went to trial before a jury and was convicted on six of these counts, receiving a total sentence of 480 months in prison.

Elam took a direct appeal and his conviction and sentence were affirmed by the Fifth Circuit. *United States v. Elam*, 561 F.App'x 432, 2014 U.S. App. LEXIS 6585, 2014 WL 1387302 (5th Cir., May 2, 2015). Elam did not seek certiorari from the U.S. Supreme Court.

1

**II. Elam's Motion to Vacate or Correct Sentence**

Elam filed a motion and amended motion to vacate or correct sentence raising 15 grounds for relief, including the following: (1) counsel was ineffective for failing to file a petition to dismiss counts 2 and 4 as duplicative; (2) counsel was ineffective during plea negotiations; (3) counsel was ineffective for failing to investigate a viable defense and subpoena witnesses; (4) counsel failed to object or raise on direct appeal to a constructive amendment or fatal variance between the first superseding indictment and the proof at trial pertaining to counts 1 through 5; (5) counsel was ineffective for failing to object to the jury instructions on counts 3 to 5, which constructively amended the indictment and/or the counts; (6) appellate counsel was "disinterested in his case" and erred by failing to peruse the record to raise more issues on appeal, including insufficient evidence and prosecutorial misconduct; (7) counsel was ineffective for not renewing a Rule 29 motion for acquittal and failing to object to the prosecutor vouching for the credibility of a witness; (8) counsel was ineffective for failing to present a coherent defense; (9) counsel was ineffective for failing to object to Count 4 of the indictment; (10) counsel was ineffective because he had conflicts of interest during all phases of the trial; (11) appellate counsel was ineffective by failing to present the strongest arguments on appeal; (12) counsel committed cumulative errors; (13) actual innocence; (14) trial and appellate counsel failed to assert prosecutorial vindictiveness in securing a superseding indictment and the prosecution of his case; and (15) counsel was ineffective by exposing a potential defense.

**III. The Report of the Magistrate Judge**

After reviewing the pleadings of both Elam and the Government and the trial records, the Magistrate Judge issued a comprehensive and detailed Report concluding that neither Elam's trial counsel nor his appellate counsel were constitutionally ineffective. The Magistrate Judge further determined that actual innocence is not a constitutional claim and that in any event, Elam did not set out a colorable claim of actual innocence. The Magistrate Judge recommended that the

motion to vacate or correct sentence be dismissed and that Elam be denied a certificate of appealability *sua sponte*.

**IV. Elam's Objections to the Report**

Elam filed objections to the Magistrate Judge's Report focusing on two points, numbered as grounds for relief (2) and (3) above. These points, together with Elam's objections, will be discussed in more detail below.

A. The Plea Offer

In ground no. 2, Elam asserted that on September 21, 2012, his attorney Brent Gimble brought him a plea offer from the U.S. Attorney, John Bales. Elam stated that he and Gimble had a dispute over the contents of the agreement but that Elam finally agreed to sign it. Gimble told him to talk to Elam's wife and Gimble would get back to him later, but the lawyer never did.

According to Elam, he tried to contact Gimble but without success. Two weeks later, Elam went to trial without any details of the expiration of the plea agreement. As a result, he received 480 months in prison.

Elam attached an unsigned plea agreement to his motion to vacate in which the parties stated that a 60-month sentence would be appropriate. He also furnished an affidavit from his brother, Derek Elam, in which Derek stated that he had convinced Elam to accept a five-year plea. An affidavit from a person named Monique Golder stated that Elam and his family had told Golder that Gimble would contact her but the lawyer never did; however, Golder's affidavit made no mention of a plea offer.

The record shows that Elam's attorney, without his client's knowledge or consent, and in connection with the prosecution, helped arrange a telephone call to Elam from his brother Derek, who was trying to cooperate with authorities to get a reduction in his own sentence. Derek assured defense counsel that he could persuade Elam to accept the plea agreement. *See United States v. Elam*, 561 F.App'x at *433.

After this phone call, Elam filed a motion asking for appointment of a new attorney. A hearing on this motion was held, at which Elam testified that during the phone call, he told Derek he was not going to take a plea. Elam went on to testify he wanted a two-year plea agreement but the Government wanted five years. He stated that his brother had tried to get him to take the five-year agreement "a million times" but that "he knew he wasn't going to be able to get me to do that." The Court stated to Elam "I think everybody understands you don't want to take the plea in this case," to which Elam replied "okay." (Pre-Trial Hearing, October 1, 2012, cause no. 6:11cr42-1, docket no. 561, pp. 4-12).

Elam asserted that counsel was ineffective by failing to inform him of the expiration date of the Government's plea offer, causing him to have to go to trial when he wanted to accept the offer. He stated in his response to the Government's answer that Gimble knew he wanted to accept the five-year plea offer.

After reviewing the record, the Magistrate Judge determined that Elam's claim that he wanted to accept the plea offer was belied by his own sworn testimony that he did not want to accept the offer. He stated that he wanted to plea for two years but the Government was not offering that and indicated that his brother had tried to get him to accept a five-year offer but that he, Derek, knew that Elam was not going to do that. Elam did not dispute the trial court's statement that "everybody understands you don't want to take the plea in this case." Because Elam made clear that he would not have accepted and did not want the plea agreement he was offered, the Magistrate Judge concluded that Elam failed to demonstrate a reasonable probability that he would have accepted the offer but for counsel's alleged ineffectiveness. *See Missouri v. Frye*, 566 U.S. 133, 147, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).

In his objections, Elam again states that he decided to accept the plea offer but was unable to get in touch with his lawyer until he went to trial. When he asked why the plea was not an option any more, counsel slumped his shoulders and said "I don't know, tell your family to pray for us." Elam goes on to state as follows:

Elam contends the District Court incorrectly made its decision not to grant relief on this issue based on Elam's pretrial testimony. Elam asserts this testimony was in response to his pretrial motion to get a new lawyer in which he was asked to explain the reason for the motion. Elam insists that this was his views and thoughts before his brother convinced him to take the plea deal by the end of the recorded phon his views and thoughts before his brother convinced him to take the plea deal by the end of the recorded phone call so the two could be home around the same time (Exhibit B, P1, Derek's Affidavit) and before Elam agreed with trial counsel to take the five-year plea deal.

Elam states as a fact that he agreed to a 5 year plea deal with his lawyer and there is nothing in Elam's pretrial testimony or anywhere else in the Government's records that can dispute that fact. Elam claims he was never asked during pretrial the direct question: do you want to take the 5 year plea deal now in this case, nor have you ever agreed with anyone to take the 5 year plea in this case? Elam contends his answer would have been yes if he had been asked. Elam adds that his pretrial testimony only proves that he didn't want to take the plea not that Elam didn't agree in the end to take the plea.

Elam goes on to complain that the Court's failure to obtain an affidavit from trial counsel to rebut or support his allegations was "a manifest error of law or fact" and that counsel's actions prevented him from accepting the 5 year plea deal.

Although Elam argues in his objections that his testimony at the pretrial hearing represented "his views and thoughts before his brother convinced him to take the plea deal by the end of the recorded phone call," this hearing took place on the eve of trial, after the phone call. Nothing in Elam's testimony suggests that Elam changed his mind or that he ever wanted to accept a five-year plea offer at any time. He had ample opportunity to state that he would have accepted the offer, but instead he made clear that he did not want to accept this offer; he stated that his brother knew he was not going to accept the Government's offer and he answered "okay" to the trial court's statement that "everybody understands you don't want to take the plea in this case."

Elam's claim that he agreed to a five-year deal with his lawyer is a conclusory allegation unsubstantiated by anything in the record. No mention was made of any such agreement during the pretrial hearing, which included discussions of the plea offer. The Fifth Circuit has held that "mere conclusory allegations on a critical issue" are insufficient to support §2255 relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *United States v. Stracener*, 959 F.2d 31, 33 (5th Cir.

5

1992, *reh. den.*). Elam has failed to show that counsel rendered ineffective assistance in this regard and his objection on this point is without merit.

B. Calling Witnesses to Testify

Elam contended that counsel should have called Derek Elam and Monique Golder to testify at trial. He argued that Derek would have testified that he, Derek, was in charge of the drug conspiracy and Elam was not involved. Elam also stated that Golder would have testified that Elam did not live with her and that her house on Cole Street was not a stash house for drugs, so the guns and drugs found in the house during a raid must have been put there by Derek Elam and an individual named Dwight McKinney on the day of the raid, after Golder had left the house.

The Magistrate Judge stated that complaints based on claims of uncalled witnesses are not favored because the presentation of witness testimony is essentially trial strategy, speculation as to the testimony of these witnesses is uncertain, and the defendant must show a reasonable probability that the testimony of the uncalled witness would have affected the result of the trial, *citing United States v. Ajaegbu*, 139 F.3d 898, 1998 WL 127718, U.S. App. LEXIS 40878 (5th Cir., March 2, 1998) *and United States v. Wolfson*, 56 F.3d 1385, 1995 WL 337757, 1995 U.S. App. LEXIS 43371 (5th Cir., May 19, 1995).

In this case, the Magistrate Judge determined that Elam failed to show a reasonable probability that the testimony of Golder and Derek Elam would likely have affected the outcome of the trial. Substantial evidence was introduced, from co-conspirators and law enforcement officials, to the effect that Golder's house on Cole Street was used as a "stash house" where drugs were kept until being sold. Although Derek's affidavit states that he just happened to unload the drugs and guns from his car into the house on the day that law enforcement officers executed the search warrant on the house, and Golder's affidavit states that there were no guns or drugs in the house when she left on the morning that the search warrant was executed, the raid turned up 1,443 hydrocone pills, over 16 pounds of marijuana, several loaded guns, some $8,385 in cash including a pillow with money stuffed into the case, and cough syrup with codeine, another drug being

6

trafficked. The house had a number of boxes of video surveillance equipment and barricades on the door to make forcible entry more difficult. Two jailhouse informants testified that Elam told him he ran "dope traps" on several houses in Longview including the one where Golder lived.

In his objections, Elam asserts that the Magistrate Judge's determination was "biased" and "too stringent" considering what happened at trial. He points to the fact that he was found not guilty on counts 6, 7, 8, 9, 10, and 12 and argues that there was "one trial, one jury, six convictions, and six acquittals which all came from one body of evidence. And moreover, Elam states that it could just as easily be concluded that the acquittals are overwhelming evidence to Elam's innocence."[1] He goes on to maintain that Derek and Golder could have rebutted the Government's theories and that he suffered prejudice because the jury heard only the Government's allegations.

Elam also insists that his acquittals on Counts 6, 7, and 8 were a direct result of the testimony of a witness named Carolyn Elam, whom he says testified that the items found at an address on Hilltop Street belonged to her and not to Elam. He claims that Golder's testimony would have exonerated him with regard to the items found at her house and Derek's testimony would have exonerated him entirely, so his attorney's failure to call these witnesses amounted to ineffective assistance.

Carolyn Elam testified that the gun found at her house belonged to her, but said nothing about drugs. (Docket no. 562, p. 108). Law enforcement agent Floyd Wingo testified that no drugs were purchased at Carolyn Elam's house and that this house "wasn't an address where drugs were sold out of." (Docket no. 562, p. 14). The jailhouse informants testified that Elam talked about

---

[1] Count Six charged Elam with possession of hydrocodone at the address on Hilltop Street, Carolyn Elam's home, on March 10, 2011. Count 7 charged him with possessing a firearm on March 10, 2011, in connection with the hydrocodone charged in Count 6. Count 8 charged him with carrying a SigSaur P220 pistol on March 10, 2011 after having been convicted of a felony. Count 9 charged him with using a communication facility (i.e. a telephone) to facilitate the commission of a felony, delivery of hydrocodone, on February 15, 2011. Count 10 charged him with using a communication facility to facilitate the commission of a felony, delivery of hydrocodone, on February 17, 2011. Count 12 charged him with using a communication facility to facilitate the commission of a felony, delivery of hydrocodone, on March 4, 2011.

7

running "dope traps" on Cole, Graham, and Melton Streets in Longview, and that Elam said he kept his drugs and guns at his girlfriend's house, but they did not report any statements by Elam about drugs or guns at Carolyn Elam's house on Hilltop Street. (Docket no. 562, pp. 53, 65). All of this evidence in combination, not merely Carolyn Elam's testimony alone, likely led to Elam's acquittal on the charges concerning the house on Hilltop Street.

By contrast, a substantial amount of evidence offered by multiple witnesses, both co-conspirators and law enforcement personnel, supported the convictions concerning the drugs and guns found at Monique Golder's house on Cole Street. Elam has failed to show that the anticipated testimony of Golder or Derek would likely have affected this result. A vast quantity of drugs and a number of guns were seized from that house, which had barricades for the door and several surveillance cameras ready to be installed. The jailhouse informants stated that Elam talked about the house on Cole Street as being one of the houses used in the conspiracy, and Elam's co-conspirators also testified that this house was used in the conspiracy. Elam offers nothing to suggest that the jury would have found Golder's testimony credible in light of the totality of the evidence in the case. *See, e.g., United States v. Bochicchio*, civil action no. C-08-310, 2009 WL 277741 (S.D.Tex., February 4, 2009) (denying ineffective assistance claim for failing to elicit allegedly exculpatory testimony from the defendant's girlfriend and noting that the movant "fails to take into account the risks that the jury would have found her story not credible or would dismiss her testimony entirely as biased. Additionally, she would have been subject to cross-examination, and the United States may have been able to impeach her through other witnesses as well.")

Elam further contends that Derek Elam's testimony would have exonerated him completely because in his affidavit, Derek states that he was responsible for the conspiracy and Elam was not involved. However, Derek did not make any such representations to federal authorities during his own prosecution for his involvement in the conspiracy; the pre-sentence report in Derek's case states that Derek was interviewed by the U.S. probation officer, and Derek received a sentence adjustment as a manager or supervisor in the conspiracy, but not an organizer or leader. Elam argues in effect

that had Derek been called as a witness, he would have testified contrary to what he told federal authorities about his role in the conspiracy, potentially opening himself up to further prosecution. Elam has wholly failed to show that testimony from Golder or Derek would likely have had any effect upon the outcome of his case. *See United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014). Elam's objections are without merit.

**V. Conclusion**

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Movant objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Movant's objections are without merit. It is accordingly

**ORDERED** that the Movant's objections are overruled and the Report of the Magistrate Judge (docket no. 18) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled motion to vacate or correct sentence is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that the Movant Spencer Elam is **DENIED** a certificate of appealability *sua sponte*. Finally, it is

**ORDERED** that any and all motions which may be pending in this civil action are hereby **DENIED.**

So **ORDERED** and **SIGNED** this **22** day of **June, 2018.**

_____
Ron Clark, United States District Judge